UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

CASE NO. : 06-CV-60506 (Marra/Seltzer)

MARK ROGGE, individually,
and on behalf of all others
similarly situated,

        Plaintiff,

vs.

WAL-MART STORES, INC.,
a foreign corporation; and John
Doe corporations,

        Defendants.

_____/

CLASS REPRESENTATION



## AMENDED COMPLAINT - CLASS ACTION

COMES NOW the Plaintiff, MARK ROGGE, individually and on behalf of all others similarly situated, by and through his undersigned attorneys, and files this Amended Class Action Complaint, and alleges as follows:

### GENERAL ALLEGATIONS

1.    Plaintiff, MARK ROGGE (hereinafter "ROGGE"), individually and on behalf of all others similarly situated, was and is a resident of Broward County, Florida, was and is over the age of eighteen years at all relevant times, and is otherwise sui juris.

1

2.      At all times material hereto, Defendant, WAL-MART STORES, INC. ("WAL-MART"), was a Delaware corporation authorized to do and is doing business in Florida, to wit: manufacturing, selling, promoting, advertising and/or distributing bed linen products, including sheets, in Broward County, Florida and throughout Florida and the United States.  Defendant has significant contacts with Broward County, Florida, and the activities complained of herein occurred, in whole or in part, in Broward County, Florida.

3.      The claims asserted by the putative class are for damages well in excess of $5,000,000.00 and, as such, this Court has jurisdiction over these claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (d)(2)(A).  In addition, the Court also has jurisdiction pursuant to 28 U.S.C. § 1332 (a)(1).  Defendant has enjoyed the benefit of having engaged in substantial business activities within the state of Florida, and is therefore amenable to jurisdiction of this Court.

4.      Bed linens and bed sheets are staple products that are sold to consumers from households throughout the world, adding up to billions of dollars worth of revenue per year for the bed linen and bed sheet industry.  The bed linen and bed sheet industry has promoted to the general public that higher thread count sheets are of better quality, are softer, and are more comfortable for sleeping.  As such, a primary concern for bed linen consumers, and therefore a key marketing, labeling and advertising point for the sale of bed linens and bed sheets, is the thread count for the sheets.

5.     It is the standard in the bed linen and bed sheet industry, and a consensus amongst organizations like ASTM International and the National Textile Association, that the proper definition and method for determining thread count is to count the number of threads in the warp and filling directions in one square inch of fabric, regardless of the ply of the yarn (single or multiple plied components).  A Commission Staff Opinion from the Federal Trade Commission has stated that a representation that a bed linen product was, for example, a 600 thread count product, when in fact the linen was 300 hundred count using two-ply yarn, would likely mislead consumers about the quality of the product being purchased. A copy of the Staff Opinion is attached hereto and incorporated herein as Exhibit A.

6.     WAL-MART is a Fortune 500 company, owning and operating more than six thousand stores throughout the United States and internationally, and is the most successful superstore retailer in the United States, selling everything from furniture to sporting goods to groceries to bed linens.  WAL-MART'S average annual sales are in excess of two-hundred and eighty billion dollars, with the bed linen segment contributing significantly to those annual sales.

7.     Over the years, capturing the bed linen and bed sheet market has become a significant agenda for WAL-MART, and has lead to distinct competition between WAL-MART and the other national retailers.  A key marketing tool for WAL-MART in its attempt to gain bed linen market share, and to attract bed linen consumers at WAL-MART, has been to promote the sale of increasingly higher thread count sheets at reasonable prices.

8.    WAL-MART now sells and distributes a large variety of private-label and brand-name bed linens and bed sheets.  WAL-MART'S private label collection includes a line called "Home Trends Select," which is labeled as being marketed by WAL-MART. Through information and belief, WAL-MART sells this private-label collection, and other offending private-label collections, wherein the sheets and bed linens are manufactured by corporations other than WAL-MART; these corporations are identified as John Doe corporations for the purposes of this Class Action Complaint.  Furthermore, through information and belief, WAL-MART knowingly or with reason to know sells brand-name offending bed linens and bed sheets.  WAL-MART prominently displays these high thread count sheets in the bed linen section of its stores, and advertises the sale of these high thread count sheets in its stores.

9.    WAL-MART has been and is continuing to engage in deceptive, unfair, misleading and fraudulent conduct in the course of the manufacture, labeling, marketing, advertising and sale of bed linen products by representing to consumers and clients that the afore described bed linen products contained and contain a certain thread count (i.e. 1000 thread count; 600 thread count) when in fact the thread counts were and are a fraction of the advertised and promoted amount.

4

10.     Plaintiff ROGGE purchased bed linen products at WAL-MART store #2151 in South Florida, including Springmaid Luxury Egyptian Blend 350 Thread Count Sheets; Springmaid Luxury Sateen 100% Damask Stripe 400 Thread Count Sheets; and Home Trends Select 600 Thread Count Sheets.  When ROGGE purchased the bed linens listed above, said bed linens contained advertised, marketed and labeled thread counts that in fact were far in excess of the bed linen products' actual, lesser thread count.

11.     The Defendants created, manufactured, designed, tested, labeled, supplied, packaged, distributed, marketed, advertised and/or sold the offending bed linens and bed sheets in Florida and throughout the United States.

12.     At all times material hereto, the Defendants had control of the design, assembly, packaging, marketing, advertising, manufacturing, labeling, testing, promoting, distribution and/or sale of the offending bed linens and bed sheets.

13.     A reasonable consumer concerned with purchasing bed linens and bed sheets of a certain thread count would have purchased the offending bed linens and bed sheets based on the misrepresentations by the Defendants.  In fact, the offending bed linens and bed sheets purchased by the Plaintiff and members of the Class contained a thread count far less than the purported amount.

14.     The Defendants' failure to disclose the true, actual thread counts of its bed linens and bed sheets constitutes deceptive, unfair, unconscionable, misleading, concealing, suppressing and fraudulent trade practices.  The Defendants have unfairly and unjustly profited from their conduct as described herein.

5

15.     The Defendants engaged in a common course of deceptive and unlawful conduct in connection with the manufacture, distribution, promotion, marketing, advertisement and sale of the offending bed linens and bed sheets by failing to disclose the true thread count for the said linens and sheets and by inflating the thread count for the said bed linens and bed sheets.

16.     Through longstanding fraudulent and deceptive conduct, the Defendants willfully concealed and misrepresented the thread count for the offending bed linens and bed sheets.   The Defendants have unfairly and unjustly profited from the failure to adequately disclose the defective nature of the bed linens and bed sheets.

## CLASS ACTION ALLEGATIONS

17.     The Plaintiff brings this action as a Class Action against Defendants pursuant to Rule 23(b)(1)(a-b) and (b)(3), *Fed.R.Civ.P.*, individually and on behalf of a Class consisting of consumers who have purchased private-label and brand-name bed linens and bed sheets from WAL-MART, including but not limited to those manufactured by the John Doe corporations, wherein the thread count for the said bed linens and bed sheets was misrepresented.   The class period commences on the first date the Defendants advertised, promoted or sold the offending bed linens and bed sheets through the date that the Court certifies this suit as a class action.   Excluded from the Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family member of any such person.   Also excluded is any trial judge who may preside over this cause.

6

18.     Plaintiff is a member of the Class and will fairly and adequately assert and protect the interests of the Class.  The interests of the Plaintiff are coincident with, and not antagonistic to, those of other members of the Class.  Plaintiff has retained attorneys who are experienced in class action litigation.

19.     The Class is composed of at least hundreds of thousands of persons, if not millions, the joinder of whom is impracticable except by means of a class action. The disposition of their claims in a class action will benefit both the parties and the Court.  Defendants sell and have sold hundreds of thousands of the offending bed linens and bed sheets over the years and, thus, the Class is sufficiently numerous to make joinder impracticable, if not completely impossible.

20.     There is a well-defined community of interest in the questions of law and fact involving and affecting the parties to be represented.  Common questions of law or fact predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

a.     Whether the Defendants manufactured, advertised, sold or delivered for sale bed linens and bed sheets that were advertised to be of a certain thread count, but were in fact of a lesser thread count;

b.     Whether the Defendants violated the Florida Unfair and Deceptive Trade Practices Act through their course of deceptive, unfair, misleading and unconscionable conduct as alleged herein;

c.     Whether the Defendants violated consumer protection laws of the state of Arkansas, the state of retail seller WAL MART's principle place of business, through their course of deceptive, unfair, misleading and unconscionable conduct as alleged herein; and

c.     Whether the Class had been damaged and, if so, the extent of such damages, and/or the nature of the equitable relief, statutory damages, including treble dames, or exemplary damages, which the Class is entitled to plead and prove.

7

21.     The prosecution of separate actions by individual members of the Class would create a risk of:

a.     Inconsistent or varying adjudications concerning individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

b.     Adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, or substantially impair or impede the ability of other members of the Class who are not parties to the adjudications to protect their interests.

22.     The class action method is appropriate for the fair and efficient prosecution of this action.

23.     Individual litigation of all claims which might be assessed by all Class Members would produce such a multiplicity of cases that the judicial system having jurisdiction of the claims would remain congested for years.   Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the Defendants' conduct.

24.     The certification of a Class would allow litigation of claims that, in view of the expense of the litigation, may be insufficient an amount to support separate actions and accordingly, the class mechanism is both superior to individual litigation and essential to ensure that these affected persons will have a proper forum for the vindication of their rights.

25.     Accordingly, the Plaintiff brings this action on behalf of himself and on behalf of all other members of the two Classes defined as follows:

8

a)     All persons who have purchased bed linens and bed sheets from WAL-MART in the state of Florida, wherein the thread count for the said bed linens and bed sheets was misrepresented, from the first date of offense through the date that the Court certifies this suit as a class action.  Excluded from the Class are the Defendants, any parent, subsidiary, affiliate, or controlled person of the Defendants, as well as the officers, directors, agents, servants, or employees of the Defendants, and the immediate family members of such persons.  Also excluded is any trial judge who may preside over this case.

b)     All persons who have purchased bed linens and bed sheets from WAL-MART in a state or U.S Territory other than the state of Florida, wherein the thread count for the said bed linens and bed sheets was misrepresented, from the first date of offense through the date that the Court certifies this suit as a class action.  Excluded from the Class are the Defendants, any parent, subsidiary, affiliate, or controlled person of the Defendants, as well as the officers, directors, agents, servants, or employees of the Defendants, and the immediate family members of such persons.  Also excluded is any trial judge who may preside over this case.

26.     Plaintiff recognizes that the Court may have to create a certain number of subclasses in order to comply with the requirements of Rule 23 and, as permitted by the Court, Plaintiff reserves the right to amend the class definition and to create any necessary subclass(es).  Should the Court decline to certify a national class under as sought herein, Plaintiff respectfully seeks certification of a class of Florida consumers under Florida law.

**COUNT I**
**Deceptive and Unfair Trade Practices**
**against WAL-MART and John Doe corporations**
**(Florida Purchaser Class Members)**

27.     Plaintiff realleges the allegations contained in paragraphs 1 through 26 as if fully set out herein.

28.     This Count is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("DUTPA"), Section 501.201, *et seq., Fla. Stat.*

29.     At all times material hereto, Plaintiff and all members of the Class were consumers within the meaning of Section 501.203, *Fla. Stat.*, and are entitled to relief under the DUTPA in accordance with Section 501.211, *Fla. Stat.*  Plaintiff purchased the offending bed linens from WAL MART as previously alleged herein.

30.     At all times material hereto, Defendant WAL MART, and the John Doe corporations, conducted trade and commerce within the meaning of Section 501.203, *Fla. Stat.*

31.     The DUTPA, Section 501.204, *Fla. Stat.*, provides in pertinent part:

> Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in conduct of any trade or commerce are hereby declared unlawful.

32.     In Section 501.204, *Fla. Stat.*, the Florida Legislature has declared that the purpose of the DUTPA is to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

33.     Beginning the first date WAL MART, and the John Doe corporations, advertised, marketed, promoted, or sold bed linens and bed sheets as being of a certain thread count when in actuality the said bed linens and bed sheets contained a lesser thread count, Defendants, individually and/or jointly, by and through their employees, agents and/or brokers, engaged in unlawful schemes and courses of conduct through unfair and/or deceptive and/or unconscionable acts and/or practices, as previously alleged herein.  Said practices regarding the misrepresentation of the thread count for bed linens and bed sheets were unconscionable, deceptive, fraudulent, under false pretense or false promises, misrepresenting, and/or a knowing concealment, suppression or omission.

34.     The     concealment     and/or     omission     of     material     facts     and/or misrepresentations and/or deception alleged in the preceding paragraphs occurred in connection with Defendants' conduct of trade and commerce in Florida and throughout the United States.

a.      Defendant's unfair and/or deceptive and/or unconscionable acts and/or practices violate the DUTPA, Section 501.204, *Fla. Stat.*

b.      A reasonable, objective consumer, like Plaintiff and members of the Class, would have and did in fact rely to his or her detriment on the misrepresentations of WAL-MART, and the John Doe corporations, regarding the thread count for bed linens and bed sheets, and as a result unknowingly purchased bed linens and bed sheets of a lesser thread count than the purported amount.

11

35.     As a direct and proximate result of Defendants' violation of the DUTPA, Section 501.204, *Fla. Stat.*, Plaintiff and the Class have suffered damages, and have suffered an ascertainable loss attributable to conduct made unlawful by the DUTPA, in an amount to be proven at trial (including but to limited to monies expended on the offending bed linens and bed sheets), in addition to attorneys' fees and costs.

WHEREFORE, Plaintiff and the Class pray that the Court enter judgment in their favor and against Defendant WAL-MART, and the John Doe corporations, as follows:

A.     Ordering that this action be maintained as a class action pursuant to Rule 23, and the following class be certified:

All persons who have purchased bed linens and bed sheets from WAL-MART in the state of Florida, wherein the thread count for the said bed linens and bed sheets was misrepresented from the first date of offense through the date that the Court certifies this suit as a class action.

Excluded from the Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family members of such persons.  Also excluded is any trial judge who may preside over this cause.

B.     Awarding Plaintiff and Class Members compensatory damages, refunds of moneys expended, statutory damages, costs of suit, and attorneys' fees.

## COUNT II
## Deceptive and Unfair Trade Practices
## against WAL-MART and John Doe corporations
## (Non-Florida Purchaser Class Members)

36.     Plaintiff realleges the allegations contained in paragraphs 1 through 26 as if fully set out herein.

37.     This Count for deceptive and unfair trade practices is maintained on behalf of Class members who have purchased bed linens and bed sheets from WAL-MART in any state or territory other than Florida, where the thread count for the said bed linens and bed sheets was misrepresented.

38.     At all times material hereto, Plaintiff and all members of the Class were consumers as defined under Arkansas deceptive trade practice statutes (Ark. Code Ann. §4-88-101 et seq.), and are entitled to relief under said statutes.

39.     At all times material hereto, Defendant WAL-MART, and the John Doe corporations, conducted trade and commerce as defined under Arkansas law (Ark. Code Ann. §4-88-101 et seq.).

40.     The purpose of the above referenced statutes is to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.  Arkansas Code § 4-88-113(f) allows for a person suffering actual damage or injury as a result of a violation defined in the chapter to bring a cause of action to recover actual damages and attorneys fee.

41.     Beginning the first date WAL-MART, and the John Doe corporations, advertised, marketed, promoted, or sold bed linens and bed sheets as being of a certain thread count when in actuality the said bed linens and bed sheets contained a lesser thread count, Defendants, individually and/or jointly, by and through their employees, agents and/or brokers, engaged in unlawful schemes and courses of conduct through unfair and/or deceptive and/or unconscionable acts and/or practices, as previously alleged herein.  Said practices regarding the misrepresentation of the thread count for bed linens and bed sheets were unconscionable, deceptive, fraudulent, under false pretense or false promises, misrepresenting, and/or a knowing concealment, suppression or omission.

42.     The concealment and/or omission of material facts and/or misrepresentations and/or deception alleged in the preceding paragraphs occurred in connection with Defendants' conduct of trade and commerce throughout the United States.

43.     Defendants' unfair and/or deceptive and/or unconscionable acts and/or practices violate the above referenced statutes.

14

44.     Arkansas has the most significant relationship to the facts alleged in this Amended Complaint.  Retail seller WAL MART has its principle place of business in Arkansas, such that corporate decisions to engage in the conduct alleged herein emanated from the state of Arkansas.  The deceptive and unfair conduct regarding misrepresentation of the true thread counts of the offending linens was conceived in and executed from Arkansas.  Arkansas has a significant interest in protecting consumers from wrongful conduct by businesses with principle offices in Arkansas, and therefore has a strong interest in this litigation as to the national class of consumers.  Finally, application of Arkansas law to a national class would not undermine other states' interests.

45.     As a direct and proximate result of Defendants' violation of the above statutes, Plaintiff and the Class have suffered damages, and have suffered an ascertainable loss attributable to conduct made unlawful by the above statutes, in an amount to be proven at trial (including but to limited to monies expended on the offending bed linens and bed sheets), in addition to attorneys' fees and costs.

WHEREFORE, Plaintiff and the Class pray that the Court enter judgment in their favor and against Defendant WAL-MART, and the John Doe corporations, as follows:

> A.     Ordering that this action be maintained as a class action pursuant to Rule 23, and the following class be certified:
>
> All persons who have purchased bed linens and bed sheets from WAL-MART from a state or U.S territory other than Florida, wherein the thread count for the said bed linens and bed sheets was misrepresented from the first date of offense through the date that the Court certifies this suit as a class action.

Excluded from the Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family members of such persons. Also excluded is any trial judge who may preside over this cause.

B. Awarding Plaintiff and Class Members compensatory damages, refunds of moneys expended, statutory damages, costs of suit, and attorneys' fees.

### COUNT III
### Unjust Enrichment
### against WAL-MART and John Doe corporations
### (National and Florida Purchasers Class Members)

46. Plaintiff realleges the allegations contained in paragraphs 1 through 26 as if fully set out herein.

47. WAL-MART has built itself into a massively successful global corporation.

48. In achieving this unprecedented success, WAL-MART has benefited from the patronage of loyal customers throughout the United States, and around the world. The Plaintiff Class has also been loyal patrons of WAL-MART. The financial success achieved by WAL-MART can in part be attributed to this patronage by the Plaintiff Class and the continued purchase of bed linens and bed sheets by members of the Class. Further, specifically, WAL-MART has benefited each and every time members of the Class have purchased misrepresented bed linens and bed sheets from WAL-MART. The John Doe corporations have similarly benefited by the continued purchase of misrepresented bed linens and bed sheets. Accordingly, the Class has conferred a benefit on the Defendants.

16

49.   WAL-MART, and the John Doe corporations, have appreciated, accepted, and retained the benefits conferred by the members of the Class.   The Plaintiff Class has paid valuable consideration, in the form of millions of dollars to WAL-MART, and in turn to the John Doe corporations, for the purchase of misrepresented bed linens and bed sheets.  WAL-MART, and the John Doe corporations, have appreciated this stream of revenue, have accepted this stream of revenue, and have retained this stream of revue, which has resulted in massive profits for WAL-MART, and the John Doe corporations.

50.   It would be inequitable for the Defendants to retain the benefits conferred by the members of the Class in the form of millions of dollars accumulated from the purchase of misrepresented bed linens and bed sheets.

51.   The afore described bed linens and bed sheets were widely designed, manufactured, advertised, promoted and/or sold by the aforesaid Defendants as containing a certain thread count, when it fact it contained a thread count far less than the purported amount.

52.   The Plaintiff and all members of the Class purchased the offending bed linens and bed sheets because of the misrepresentations of the Defendants.

53.   The Defendants have achieved massive financial success through deceit and the deception of the members of the Plaintiff Class.  It would be inequitable for the Defendants to retain the benefits of these profits under these circumstances.

WHEREFORE, Plaintiff and the Class pray that the Court enter judgment in their favor and against Defendant WAL-MART, and the John Doe corporations, as follows:

17

A.    Ordering that this action be maintained as a class action pursuant to Rule 23, and the following classes be certified:

1)    All persons who have purchased bed linens and bed sheets from WAL-MART in the state of Florida, wherein the thread count for the said bed linens and bed sheets was misrepresented from the first date of offense through the date that the Court certifies this suit as a class action.

Excluded from the Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family members of such persons. Also excluded is any trial judge who may preside over this cause.

2)    All persons who have purchased bed linens and bed sheets from WAL-MART in a state or U.S. territory other than the state of Florida, wherein the thread count for the said bed linens and bed sheets was misrepresented from the first date of offense through the date that the Court certifies this suit as a class action.

Excluded from the Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family members of such persons. Also excluded is any trial judge who may preside over this cause.

B.    Awarding Plaintiff and Class Members compensatory damages, refunds of moneys expended, statutory damages, costs of suit, and attorneys' fees.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated this 24 day of August, 2006.

Respectfully submitted,

Gary M. Farmer, Jr.
Fla. Bar No. 914444
FREEDLAND, FARMER,
RUSSO & SHELLER, PL
Co-counsel for Plaintiffs
2665 Executive Park Dr., Suite 3
Weston, FL  33331
Telephone No.: (954) 467-6400

Edward H. Zebersky
Fla. Bar No.: 0908370
E-mail:  ezebersky@zpklaw.com
James P. Gitkin
Fla. Bar. No.: 570001
E-mail:  jgitkin@zpklaw.com
ZEBERSKY & PAYNE, LLP
4000 Hollywood Blvd., Suite 400-N
Hollywood, FL 33021
Telephone:   (954) 989-6333
Facsimile:   (954) 989-7781

**Co-counsel for Plaintiffs**

19

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. Mail this ⁀24 day of August, 2006, to:  William Stetson, Esq., Sonnenschein Nath & Rosenthal LLP, 777 South Flagler Drive, West Palm Beach, FL 33401-6144 (561-833-2410, Facsimile 561-833-8387); and Michael A. Schlanger, Esq., Michael H. Barr, Esq., Sandra D. Hauser, Esq., Sonnenschein Nath & Rosenthal LLP, 1221 Avenue of the Americas, New York, NY  10020-6700 (212-768-6700, Facsimile 212-768-6800).

By: _____

JAMES P. GITKIN, ESQ. (FBN 570001)



UNITED STATES OF AMERICA
## FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Division of Enforcement
Bureau of Consumer Protection

August 2, 2005

Mr. E. Linwood Wright, III
Chairman
Textile Bedding Committee
National Textile Association
6 Beacon Street, Suite 1125
Boston, MA 02108

Dear Mr. Wright:

Thank you for your letter requesting a Commission staff opinion regarding the appropriate way to disclose fabric "thread count" (yarns per square inch) on labels or in advertising for household textile products, such as bed sheets. Please note that this information is not required pursuant to the Textile Fiber Products Identification Act, 15 U.S.C. § 70 *et seq.*, and Commission rules and regulations under the Act, 16 C.F.R. Part 303. It is, however, governed by Section 5 of the FTC Act, which prohibits deceptive acts or practices. 15 U.S.C. § 45.

You state that the thread count is an important indicator of fabric quality for consumers who purchase textile bedding products, and that thread count has evolved over time as a key indicator used by consumers to make purchasing decisions. In addition, you state that it is generally understood that a higher thread count indicates a better product. Your letter describes the specific issue with regard to description of thread count as follows:

> The common practice in the U.S. textile bedding industry for decades has been to count the number of threads in both the warp and filling directions. Yarns were counted as one yarn, regardless of whether the yarn was a single ply or multi-ply yarn. (A multi-ply yarn is one yarn that has been created by twisting two or more yarns together.) In recent years, however, some textile bedding suppliers have changed the way they have determined thread count by counting plied yarns individually. This practice inflates the thread count numbers to levels which double or triple (or more) the thread count as determined by the long standing, traditional way. This practice has also created confusion in the marketplace and has caused consumers to compare thread counts that may have been calculated in two dramatically different ways.

Finally, you state that some of your member companies have experienced competitive disadvantage by using the traditional method of counting threads and are considering switching to the method of multiplying by the number of plies within a yarn, thus achieving a higher thread count. You ask for the staff's opinion as to whether the new method could violate Section 5 of the FTC Act.

**Exhibit A**

Mr. E. Linwood Wright, III, page 2

You further note that ASTM, an international standards organization, has addressed this issue in its Standard Test Method for Warp End Count and Filling Pick Count of Woven Fabric, Designation: D3775-03a.  Section 9.1.4 instructs: "Count individual warp yarns (ends) and filling yarns (picks) as single units regardless of whether they are comprised of single or plied components."

A representation about thread count, like other objective, material claims about a product, must be supported by a "reasonable basis."  In determining what constitutes a reasonable basis for claims, we consider what experts in the field believe is appropriate, including whether there are relevant consensus based test procedures, such as an ASTM test procedure, or other widely accepted industry practices that apply to the matter.  If so, we give such procedures or practices great weight in determining whether the advertiser has met its substantiation burden.

Based upon the ASTM standard, as well as the information you have provided about standard industry practices with regard to disclosing thread count, we believe that consumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn.  A possible non-deceptive way to disclose both the thread count and the yarn ply would be to state, for example: "300 thread count, 2 ply yarn."  A representation of "600 thread count" for this same product would likely mislead consumers about the quality of the product being purchased.

I also wish to bring to your attention a 1996 closing letter, placed on the FTC public record, terminating an investigation of possibly deceptive practices in connection with the packaging of down comforters.  In that instance, the staff determined that no further Commission action was warranted when the company notified the staff that it was changing its package product description from "finely woven 760 threads per sq. inch" to "finely woven 380 2-ply fabric."  A copy of this closing letter is attached.

In accordance with Section 1.3(c) of the Commission's Rules of Practice and Procedure, 16 C.F.R. § 1.3(c), this is a staff opinion only and has not been reviewed or approved by the Commission or by any individual Commissioner, and is given without prejudice to the right of the Commission later to rescind the advice and, where appropriate, to commence an enforcement action.  In accordance with Section 1.4 of the Commission's Rules of Practice and Procedure, 16 C.F.R. § 1.4, your request for advice, along with this response, will be placed on the public record.

We appreciate your taking the time to write to us.  Please feel free to call Steve Ecklund at 202-326-2841 if you have any further questions.

Sincerely yours,

James Kohm
Associate Director for Enforcement

Enclosure



UNITED STATES OF AMERICA
**FEDERAL TRADE COMMISSION**
WASHINGTON, D.C. 20580

Division of Enforcement
Bureau of Consumer Protection

April 8, 1996

Jeffrey Goldman, President
California Feather & Down Corporation
11842 S. Alameda St.
Lynwood, CA 90262

 Re: California Feather & Down Corporation, 9523373

Dear Mr. Goldman:

 The Commission has conducted an investigation involving your company's possible violation of the Federal Trade Commission Act through the use of unfair acts or deceptive acts or practices in connection with the packaging of down comforters.

 By letter dated March 12, 1996, Mr. N. Frank Wiggins stated that your company is removing the reference to "760" from the packaging and labeling of your "White Knights 760 White Goose Down Comforter." Further, Mr. Wiggins' August 12, 1995, letter stated that the company had revised the text of the packaging for this product to say that the White Knights 760 White Goose Down Comforter contains "finely woven 380 2-ply fabric. . . ." The former packaging had stated "finely woven 760 threads per sq. inch. . . ."

 Upon further review of this matter, it now appears that no further action is warranted by the Commission at this time. Accordingly, the investigation has been closed. This action is not to be construed as a determination that a violation has not occurred, just as the pendency of an investigation should not be construed as a determination that a violation has occurred. The Commission reserves the right to take such further action as the public interest may require.

Sincerely,

Elaine D. Kolish
Associate Director

cc: N. Frank Wiggins, Esq.
 Venable, Baetjer, Howard & Civiletti, LLP
 1201 New York Avenue, NW, Suite 1000
 Washington, DC  20005-3917