UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

MARK ROGGE, individually and on behalf of all others similarly situated,

    Plaintiff(s),

vs.

WAL-MART STORES, INC., a foreign corporation; and John Doe corporations,

    Defendants.

_____ /

CASE NO. 06-CV-60506
(Marra/Seltzer)

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT OF DEFENDANT WAL-MART STORES, INC. AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

---

The Law Offices of Freedland,
Farmer, Russo & Sheller, PL
2665 Executive Park Dr., Suite 3
Weston, Florida 33331
(954) 467-6400

Edward Zebersky, Esq.
Zebersky & Payne, LLP
4000 Hollywood Blvd., STE 400-N
Hollywood, FL 33021
(954) 989-6333

Attorneys for Plaintiff

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PLAINTIFF HAS PLED SUFFICIENT FACTUAL ALLEGATIONS . . . . . 2

    A. Legal Standard - Rule 9(b) Does Not Apply . . . . . . . . . . . . . . . . . 2

    B. Plaintiff Has Alleged Material Facts Sufficient to
       Meet Any Pleading Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A. Applicable Standards and Statutory Schemes . . . . . . . . . . . . . . . 5

    B. Florida Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C. Arkansas Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

*Briehl v. General Motors Corp.*,
172 F.3d 623 (8th Cir. 1999) .................................... 13

*CBP Resources, Inc. V. SGS Control Services, Inc.*,
394 F. Supp. 2d 739 (M.D. N.C. 2005) .............................. 3

*Coghlan v. Wellcraft Marine Corp.*,
240 F. 3d 449 (5th Cir. 2001) ................................... 12

*Conley v. Gibson*,
355 U.S. 41, 78 S.Ct. 99, 2 L.Ed 2d 80 (1957) ...................... 6

*Currier v. Spencer*,
772 S.W. 2d 309 (Ark. 1989) ..................................... 10

*Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*,
693 So. 2d 602 (Fla. 2d DCA 1997) ................................. 6

*Federal Trade Commission v. Security Rare Coin
   & Bullion Corp.*,
931 F. 2d 1312 (8th Cir. 1991) .................................... 3

*Ford Motor Co. v. Rice*,
726 So. 2d 626 (Ala. 1998) ...................................... 13

*Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*,
715 So. 2d 311 (Fla. 4th DCA 1998) ................................ 7

*Garfield v. NDC Health Corp.*,
466 F.3d 1255 (11th Cir. 2006) .................................... 3

*Greiner Motor Co. v. Sumter*,
427 S.W. 2d 8 (Ark. 1968) ....................................... 11

*Grossman v. Nationsbank, N.A.*,
225 F.3d 1228 (11th Cir. 2000) .................................... 6

*John P. Vilano, Inc. V. CBS, Inc.*,
176 F.R.D. 130 (S.D. N.Y. 1997) ................................... 3

*Latman v. Costa Cruise Lines*,
758 So. 2d 699 (Fla. 3d DCA 2000) ................................. 7

*Magluta v. Samples,*
256 F.3d 1282 (11th Cir. 2001) ............................................. 6

*Marshall v. W. & L. Enterprises Corp.,*
360 So. 2d 1147 (Fla. 1st DCA 1978) ....................................... 8

*Moore Ford Co. v. Smith,*
604 S.W. 2d 943 (Ark. 1980) .............................................. 10

*Oatway v. American International Group, Inc.,*
325 F.3d 184 (3d Cir. 2003) ............................................... 6

*Pelman v. McDonald's Corp.,*
396 F.3d 508 (2d Cir. 2005) ............................................... 3

*Pinellas County Department of Consumer Affairs v. Castle,*
392 So. 2d 1292 (Fla. 1980) ............................................... 7

*Renaissance Cruises, Inc. v. Glassman,*
738 So. 2d 436 (Fla. 4th DCA 1999) ........................................ 7

*Rollins v. Heller,*
454 So. 2d 580 (Fla. 3d DCA 1984), *rev. denied,* 461 So. 2d 114 (Fla. 1985) ..... 7, 8

*Static Control Components, Inc. v. Darkprint Imaging, Inc.,*
135 F. Supp. 2d 722 (M.D. N.C. 2001) ..................................... 4

*Thaeter v. Palm Beach Sheriff's Office,*
449 F. 3d 1342 (11th Cir. 2006) ........................................... 6

*Tuckish v. Pompano Motor Co.,*
337 F. Supp 2d 131320 (S.D. Fla. 2004) ............................... 3, 4, 7

*Turner Greenberg Associates, Inv. v. Pathman,*
885 So.2d 1004 (Fla. 4th DCA 2004) ..................................... 7, 8

*Union Motors, Inc. v. Phillips,*
410 S.W. 2d 747 (Ark. 1967) ............................................. 11

*Urling v. Helms Exterminators, Inc.,*
468 So. 2d 451 (Fla. 1st DCA 1985) ....................................... 7

*Wallis v. Ford Motor Co.,*
__ S.W. 2d __, 2005 WL 1120218 (Ark., May 12, 2005) ..................... 10

*Watkins v. Bibb,*
2006 WL 1975992 (S.D. N.Y., July 12, 2006) ............................. 3, 4

The Plaintiff, MARK ROGGE, individually and on behalf of all others similarly situated, files this Memorandum of Law in Opposition to Defendant, WAL-MART STORES, INC.'s (hereinafter "WAL-MART") Motion to Dismiss Amended Complaint and Memorandum of Law in Support Thereof (hereinafter "Motion to Dismiss"), and in support thereof states the following:

## I. INTRODUCTION

This lawsuit was brought by MARK ROGGE, a consumer who purchased from WAL-MART bed sheets that were labeled to be high thread count linens, only to later find out that he paid a higher price for these linens because they were represented to be high thread count linens when in fact they were not high thread count linens. It is notable that Defendant has not denied the allegations of Plaintiff's Amended Complaint, and nowhere in Defendant's Motion to Dismiss will the Court find any attempt to convince this Court that Defendant did not misstate the actual thread count in its bed linens. Instead, Defendant attempts to obfuscate the issues while advancing a disingenuous argument that Plaintiff has failed to plead essential elements to his claim. Through investigation, and in connection with related litigation against another national chain, it appears that WAL-MART engaged in a novel and certainly deceptive manner of counting threads, in an effort to capitalize on an industry standard often utilized by consumers for purchasing bed linens. The attraction of high thread count bed sheets is simple – they are softer and more comfortable, and last longer, even after machine washings, than standard thread count linens. Plaintiff, and other consumers like him, paid higher prices for linens labeled high thread count, often four or five times higher than the price for a standard 200 or 300 thread count linen.

In reading WAL-MART's Motion to Dismiss, Plaintiff is left wondering whether the

Defendant mistakenly reviewed some other Complaint, as Defendants Motion to Dismiss is replete with claims that Plaintiff has failed to make certain allegations. A review of Plaintiffs' Complaint, however, shows that all of the allegations or representations that WAL-MART claims to be missing are in fact found in the Amended Complaint. ROGGE has alleged that he is a purchaser of these sheets, providing great detail as to the industry standard, the importance of thread count information, Plaintiff's purchase details, why this is a violation of law, and an ascertainable loss. Plaintiff has alleged, and ultimately will prove, the Defendant engaged in deceptive, misleading and unconscionable conduct by taking advantage of its superior information compared to consumers and misrepresenting its bed sheets as being high thread count. Because Plaintiff has alleged an economic loss that has already occurred, in that he received less than that which he was promised in connection with the purchase of these bed sheets, Plaintiff has likewise alleged an ascertainable loss which is compensable under the various consumer protection statutes cited in his Amended Complaint. Below, Plaintiff provides the Court with citations to allegations of the Amended Complaint that show that Plaintiff has provided significantly more than "generic 'class' allegations" or "general pronouncement," as claimed by Defendant.

## II. **PLAINTIFF HAS PLED SUFFICIENT FACTUAL ALLEGATIONS**

### A. **Legal Standard - Rule 9(b) Does Not Apply**

Condensed to its essence, WAL-MART's Motion to Dismiss is based almost entirely on arguments centered on what Plaintiff has alleged or, in WAL-MART's eyes, what Plaintiff has failed to allege. Once the Court disposes of Defendant's merit less pleading defenses, it is three quarters of the way home. Contrary to Defendant's assertions, Plaintiff has in fact alleged that he was a purchaser of the offending bed linens, and has alleged

that he was induced to make said purchases because of misrepresentations or omissions by Defendants as to the true thread count of its offending linens. Parenthetically, Plaintiff would point out that under both Arkansas and Florida law, Plaintiff is not required to prove detrimental reliance on misrepresentations in order to recover. More on that later. But Defendant is simply wrong when it claims that the pleading requirements of *Fed.R.Civ.P.* 9(b) apply to a deceptive trade practice case, and that Plaintiff has failed to meet the pleading requirements of *Fed.R.Civ.P.* 9(b).

Rule 9(b) requires specificity when alleging fraud. However, the trend followed by a majority of jurisdictions and courts that have considered the issue - including the Eighth Circuit, which covers Arkansas[1] - is that the pleading requirements of Rule 9(b) do not apply to a deceptive trade practices claim. *See, Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2nd Cir. 2005); *Federal Trade Comm'n v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1315 (8th Cir. 1991); *Tuckish v. Pompano Motor Co.*, 337 F.Supp.2d 1313 1320-21 (S.D. Fla. 2004); *Watkins v. Bibb*, 2006 WL 1975992, *2 (S.D. N.Y., July 12, 2006); *CBP Resources, Inc. V. SGS Control Services Inc.*, 394 F.Supp.2d 733, 739 (M.D. N.C. 2005); and *John P. Vilano Inc. V. CBS, Inc.*, 176 F.R.D. 130, 131 (S.D. N.Y. 1997) (in action for false advertising and deceptive practices, court held "But nothing in the language or history of Rule 9(b) suggests that it is intended to apply, willy-nilly, to every statutory tort that includes an element of false statement.").

*Tuckish* is a recent decision from the Southern District of Florida where claims for both deceptive trade practices and common law fraud were pled. The court discussed the heightened pleading requirements of Rule 9(b) but only in connection with the common law

---

1. The overwhelming number of cases found in the Eleventh Circuit dealing with the pleading requirement under Rule 9(b) involve securities fraud where, as with common law fraud, individual reliance is required. *See, e.g., Garfield v. NDC Health Corp.*, 466 F.3d 1255 (11th Cir. 2006).

-4-

fraud claim; the deceptive trade practice claim, by contrast, required only allegations that the consumer has been aggrieved by an unfair or deceptive practice committed by a seller in the course of trade or commerce. *Tuckish*, 337 F.Supp.2d at 1320. Thus, when asserting a claim under Florida's unfair and deceptive trade practice laws, the more liberal pleading standards of Rule 8 apply. *Watkins*, 2006 WL 1975992 at *2; *Static Control Components, Inc. v. Darkprint Imaging, Inc.*, 135 F.Supp.2d 722, 730 (M.D. N.C.2001). Under Rule 8, "notice" pleading requires only that the claimant provide "a short, plain statement of the claim showing that the pleader is entitled to relief." Certainly, Plaintiff has done so here, and the Motion to Dismiss should be denied.

## B. Plaintiff Has Alleged Material Facts Sufficient to Meet Any Pleading Standard

Although Rule 9(b) and its stringent pleading requirement do not apply to this objectively based deceptive trade practices case, if it did Plaintiff has easily met the standard. Plaintiff has provided great detail as to the specifics surrounding his purchase of the offending bed linens, including the exact store where he made the purchase, and has described with specificity the deceptive conduct that caused his economic losses - including allegations regarding the industry standard that he applied in making his purchase (and upon which Defendant capitalized in deceiving consumers) and a Federal Trade Commission report stating that Defendant's actions were wrongful. Below are some of the material allegations:

> ¶¶ 4-5 Plaintiff alleges an industry standard that has become accepted and relied upon by consumers in determining bed linen quality, known as "thread count" (included within this allegation is an FTC Staff Opinion stating that thread count disclosure is voluntary, not mandatory, and that representing a 300 thread count linen as 600 thread count by counting each ply of yarn in two-ply yarn would be deceptive or misleading);
>
> ¶ 7 Plaintiff alleges Defendant's interest in the bed linen market and its attempts to gain greater market share;

¶ 8 Plaintiff alleges the types or lines of purported "high-quality" be linens sold by WAL-MART;

¶ 9 Plaintiff alleges that WAL-MART has engaged in unfair and deceptive trade practices by selling bed linens it represents to consumers as containing a thread count higher than actually found in said bed linens;

¶ 10 Plaintiff alleges that he was a victim of the wrongful conduct alleged above, and alleges that he purchased Springmaid Luxury Egyptian Blend 350 Thread Count Sheets; Springmaid Luxury Sateen 100% Damask Stripe 400 Thread Count Sheets; and Home Trends Select 600 Thread Count Sheets from WAL-MART store #2151 in South Florida.

¶¶ 11 through 16 Plaintiff alleges that WAL-MART was in control of all aspects of the manufacturing, labeling, marketing & selling of its private label sheets, and that it failed to accurately disclose the true thread counts of said sheets (instead deceptively listing a higher thread count);

¶ 13 Plaintiff alleges that a reasonable consumer like himself purchased the offending bed linens **"based on"** the misrepresentations made by Defendant as to the thread count; and

¶¶ 34, 35, 45 and 52 Plaintiff alleges that he relied to his detriment on the misrepresentations made by WAL-MART as to thread count, and that as a direct and proximate result of said misrepresentations (or, as stated in ¶ 52, "because of" said misrepresentations), Plaintiff and the class have suffered economic damages.

Clearly Plaintiff has provided very detailed allegations as to the wrongs upon which suit is based, how those wrongs induced Plaintiff to purchase something that was less than it was represented to be, and the damages caused by said conduct. These allegations are sufficient to meet Rule 9 if it applied, and certainly are more than sufficient to meet the more liberal standard under Rule 8. The Motion to Dismiss is without basis and should be denied.

### III. <u>LEGAL ARGUMENT</u>

#### A. <u>Applicable Standards and Statutory Schemes</u>

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the trial court evaluates the merits of the claims by accepting all well pleaded

-6-

allegations in the complaint as true, viewing them in a light most favorable to the plaintiff. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed 2d 80 (1957). When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto. *Thaeter v. Palm Beach Sheriff's Office,* 449 F.3d 1342, 1352 (11th Cir. 2006); *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir.2000) (per curiam) (citation omitted). A complaint may not be dismissed for failure to state a claim under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.; Magluta v. Samples,* 256 F.3d 1282, 1283-84 (11th Cir.2001) (per curiam) (quoting *Conley v. Gibson, supra*). The issue is not whether a plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to support the claims. *Oatway v. American International Group, Inc.,* 325 F.3d 184, 187 (3d Cir. 2003). A motion to dismiss for failure to state a claim upon which relief can be granted may be granted only where it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Conley,* 355 U.S. 41, 45-46.

### B. Florida Law

Chapter 501 of the Florida Statutes contains Florida's Deceptive and Unfair Trade Practices Act (hereinafter "FDUTPA"). FDUTPA protects consumers from those who engage in unfair, unlawful and deceptive trade practices and acts. *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.,* 693 So. 2d 602, 605-606 (Fla. 2nd DCA 1997). A finding of fraudulent intent, however, is not necessary to sustain a violation under FDUTPA; the standard for recovery is whether a reasonable, objective consumer would have been deceived, and consumers need not prove individual, detrimental reliance in order to prevail.

-7-

*Tuckish,* 337 F.Supp.2d at 1320; *Turner Greenberg Associates, Inc. V. Pathman,* 885 So.2d 1004, 1009 (Fla. 4th DCA 2004); *Latman v. Costa Cruise Lines,* 758 So.2d 699 (Fla. 3rd DCA 2000); *Renaissance Cruises, Inc. v. Glassman,* 738 So.2d 436 (Fla. 4th DCA 1999); and *Rollins, Inc. v. Heller,* 454 So.2d 580, 584 (Fla. 3rd DCA 1984), *rev. denied,* 461 So.2d 114 (Fla. 1985).

Under the FDUTPA, damages are generally based upon the economic diminution in value of the product or service purchased; in other words, the measure of actual damages is the difference, if any, between the value of the item in question and its value if full and accurate disclosure had been made. *Delgado, Pathman, supra; Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati,* 715 So.2d 311 (Fla. 4th DCA 1998), *citing Rollins v. Heller,* 454 So.2d 580 (Fla. 3d DCA 1984); *Urling v. Helms Exterminators, Inc.,* 468 So.2d 451, 454 (Fla. 1st DCA 1985); *Pinellas County Department of Consumer Affairs v. Castle,* 392 So.2d 1292, 1293 (Fla. 1980); §501.212(3), *Fla. Stat.* (recognizing that the relief available under FDUTPA is in addition to other remedies available under Florida law). *Fort Lauderdale Lincoln Mercury v. Corgnati* provides an illustration of this principle. There, Corgnati purchased what was represented to be a new luxury automobile. Based upon representations that the vehicle was new and had not been in an accident and repaired, Corgnati purchased the vehicle. Later, after inspection by a repair shop, Corgnati learned that the car had in fact been in an accident and had been repaired & repainted. On appeal, the court held that a consumer like Corgnati suing under FDUTPA was entitled to receive, as his measure of damages, the diminution in value of the thing received caused by the deceptive or unfair trade practice. Specifically, the court held

> Generally, the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered

according to the contract of the parties. [citations omitted] A notable exception to the rule may exist when the product is rendered valueless as a result of the defect--then the purchase price is the appropriate measure of actual damages.

*Corgnati*, 715 So.2d at 314, citing *Rollins v. Heller, supra; see also, Turner Greenberg v. Pathman, supra.*

Applying the diminution standard to the case at bar is easy. One measure of damages in the instant case could be the difference between the price paid by Plaintiff and the class for the offending bed linens (before the facts surrounding Defendant's misrepresentation of the true thread counts was revealed) and the reduced price charged and paid following this lawsuit and after Defendant placed the subject bed sheets on final clearance sale. The difference in market value of the offending linens, represented by the difference in price collected by other retailers for similar thread count linens (using the real industry standard for measuring same) and the price charged by Defendant when still misrepresenting the thread counts in the offending linens, is another possible measure of damages. Either way, Plaintiff and the class have specifically alleged that they suffered an actual loss under FDUTPA in the form of payment of additional money for a higher quality bed linen, with higher thread count, than that which was actually delivered. Thus, Plaintiff and the class advance a damage claim under FDUTPA includes a diminution in value of the drugs or services: the difference in value between that paid by Plaintiffs and what they should or would have paid had the truth been represented. FDUTPA allows for the recovery of such sums. *Marshall v. W. & L. Enterprises Corp.*, 360 So.2d 1147, 1148 (Fla. 1st DCA 1978); §501.201, *Fla. Stat.*

Not surprisingly, WAL-MART does not even cite to FDUTPA nor does it make a single argument for dismissal of the FDUTPA claim (save for the overall pleading with

particularity argument dealt with above). Defendant has therefore conceded the viability of this claim. Given the liberal purpose and application of FDUTPA, and the fact that consumers need not prove individual reliance in order to recover, Plaintiff has clearly stated a cause of action upon which relief can be granted as to a Florida class of consumers who purchased bed linens for which the true thread count was misrepresented.

### C. Arkansas Law

Arkansas also has a consumer protection or deceptive trade practices statute designed to protect the consuming public. Like FDUTPA, the Arkansas statutory scheme, known as the Arkansas Deceptive Trade Practices Act (hereinafter "ADTPA") and codified at Sections 4-88-101 *et seq.*, includes an objective standard that does not require detrimental reliance for a consumer to recover. A private right of action is provided in section 4-88-113(f) in favor of any person (not limited to citizens of the state) who suffers "actual damage **as a result of** an offense or violation" of the law.[2] The language used in ADTPA is identical to the operative language ("as a result of") found in FDUTPA. Given the lack of an opinion from an Arkansas court on the issue, this Court should interpret the statute similarly to the settled interpretation of the Florida statute and others that use the same language - requiring only a showing that a reasonable, objective consumer would have been deceived or mislead by the misrepresentations of the Defendant. *Tuckish, Turner Greenberg, Latman, Glassman, Rollins, supra.*[3]

The only real guidance from an Arkansas court regarding the ADTPA and recovery of a diminution in value for a consumer protection violation is the Arkansas Supreme

---

2. All emphasis supplied is that of undersigned counsel, unless otherwise indicated.

3. *See, e.g.*, Colorado Consumer Protection Act, §6-1-113; Connecticut Unfair Trade Practices Act, §42-110g; Michigan Consumer Protection Act, §445.911; Massachusetts Consumer Protection Act, ch. 93A, §§ 2 and 11.

Court's decision in *Wallis v. Ford Motor Co.*, — S.W.2d —, 2005 WL 1120218 (Ark., May 12, 2005). Although Wallis is not directly on point, since it involves a product liability case where the claim was for a product defect that had not manifested itself and the named plaintiff had not yet suffered any injury, the way the court distinguished the claims there form the type of claim asserted in the case at bar and its reliance on a 5th Circuit case provide this court with valuable guidance.

In *Wallis*, the plaintiff brought a class action on behalf of all consumers who owned or leased a Ford Explorer, seeking damages due to the fact that a design defect in Explorers caused them to roll over under normal operations. Wallis had not been did not allege any personal injury or property damage, and his Explorer had not malfunctioned in any way. The court looked to warranty law and held that even under the ADTPA, a consumer suing for a product defect that had not yet manifested itself could not recover for a reduced value of the product simply because of its propensity to one day injure someone. *Wallis*, at *4-7. However, the court was careful to distinguish unrealized product defects yet to have caused injury from cases where a consumer receives a product that is different from that which was promised. Citing two cases where automobiles were sold represented as new, when in fact they had been in accidents and repaired, the Arkansas Supreme Court reaffirmed its prior holdings that **"the standard measure of damages for either breach of warranty or misrepresentation is the difference in value between the product as warranted and its actual value."** *Id.* at *2, citing *Currier v. Spencer*, 772 S.W.2d 309 (Ark. 1989), and *Moore Ford Co. v. Smith*, 604 S.W.2d 943 (Ark. 1980). *Currier* is particularly applicable here, as it involved claims under the Magnuson-Moss Warranty Act, the federal functional equivalent of ADTPA. Moreover, in *Wallis* the Arkansas Supreme Court merely reaffirmed what had long been the law in Arkansas - that

this measure of damages (difference between value as represented and actual value with flaw or defect) should be applied when the facts regarding a product are misrepresented in a consumer transaction. *Greiner Motor Co. v. Sumter*, 427 S.W.2d 8 (Ark. 1968); and *Union Motors, Inc. v. Phillips*, 410 S.W.2d 747 (Ark. 1967).

The *Wallis* court was careful to distinguish cases involving misrepresented consumer purchases (*Currier* and *Moore Ford*), or cases where someone does not receive that which was promised, from product liability cases where the defect in the product had not yet manifested itself. In practical terms, the Arkansas Supreme Court found that where some item is sold and the true nature, quality or condition of the item has been misrepresented, and that misrepresentation resulted in the consumer paying an amount greater than the item's actual value, the consumer is entitled to recover the difference in value. The court summed up the distinction:

> In sum, the principle undergirding our case law is that benefit-of-the-bargain damages are only awarded in fraud cases where a party proves that the product received is not what was bargained for; that is, the product received in fact manifests that is it different from that which was promised.

*Wallis*, at *3. That is exactly what has occurred in this case. Plaintiff ROGGE, and thousands of other consumers, paid inflated amounts for what they were told were high thread count bed linens. In fact, they were not high thread count bed linens, and WAL-MART misrepresented the quality of the linens to justify a higher sales price. This is exactly like buying an automobile represented as new, only to find that the automobile had been driven, been in an accident, and repaired. Using the terminology of Wallis, the bed linens received by Plaintiff were not what he had bargained for; that is, the bed linens

-12-

received have in fact manifested[4] that they are different than that which was promised in that they are not made of true high thread count cotton. Conversely, this case is not about the propensity for a premature product failure - the product has already failed in that it is simply not what was promised.

The Arkansas Supreme Court relied heavily on the 5th Circuit's decision in *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir. 2001), which involved a suit over purchase of fishing boat. The buyer sued the seller seeking a partial refund, equal to diminished value of the boat, due to the fact that the buyer was promised an all fiberglass boat but was delivered a boat made of both wood and fiberglass (the latter being lesser quality). In reversing the district court's dismissal of the claims under Magnuson-Moss and both Texas and Florida's deceptive trade practice statutes, the court focused on what was promised compared to what was delivered:

> The key distinction between this case and a "no-injury" product liability suit is that the Coghlans' claims are rooted in basic contract law rather than the law of product liability: **the Coghlans assert they were promised one thing but were given a different, less valuable thing**. The core allegation in a no-injury product liability class action is essentially the same as in a traditional products liability case: the defendant produced or sold a defective product and/or failed to warn of the product's dangers. The wrongful act in a no-injury products suit is thus the placing of a dangerous/defective product in the stream of commerce. **In contrast, the wrongful act alleged by the Coghlans is Wellcraft's failure to uphold its end of their bargain and to deliver what was promised.** The striking feature of a typical no-injury class is that the plaintiffs have either not yet experienced a malfunction because of the alleged defect or have experienced a malfunction but not been harmed by it. Therefore, the plaintiffs in a no-injury products liability case have not suffered any physical harm or out-of-pocket economic loss. **Here, the damages sought by the Coghlans are not rooted in the alleged defect of the product as such, but in the fact that they did not receive the**

---

4. Ultimately, the court in Wallis did not allow recovery because the defect had not yet manifested itself, and because the claim there was for a product defect with the potential to cause injury, as opposed to a consumer contract driven benefit of the bargain claim. But in discussing the ADTPA, the court noted that actual damages are realized when a defect has manifested itself. Again, that is what has occurred in this case - the defective nature of the bed linens (not made of high thread count cotton) is already manifest.

-13-

**benefit of their bargain.** It is worth noting that the no-injury approach to product litigation has been rejected in several recent decisions. *See, e.g. Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir.1999); *Ford Motor Co. v. Rice*, 726 So.2d 626 (Ala.1998).

*Wallis*, at *5, *citing Coghlan*, 240 F.3d at 455 n. 4. Like the Coghlans, here the claims of Plaintiff ROGGE and the class are rooted in the fact that they did not receive the benefit of their bargain, or were promised one thing but given a different, less valuable thing.

### CONCLUSION

As shown herein, Plaintiff has made all of the necessary allegations to sustain his claim under the Florida and Arkansas law. Plaintiff has alleged that he is a purchaser of these offending bed linens, naming the store where he made said purchase, and identifying with particularity the wrongful conduct of the Defendant which caused him to make the purchase. He has described the industry standard applicable to measuring quality of bed linens, and has alleged that Defendants misrepresented the true thread count of its linens under this standard. This is not a product defect case where the defect has yet to manifest itself; rather, Plaintiff has suffered an ascertainable or actual loss which bears a causal connection to Defendant's misrepresentations regarding the true thread count of its bed linens. Plaintiff need not prove actual reliance on any particular representation, label or advertisement to state a cause of action. In sum, Plaintiff is suing to recoup the benefit of his bargain, both for himself and all others similarly situated. Based upon all of the foregoing, the Court should enter an order denying WAL-MART's Motion to Dismiss.

Respectfully submitted,

The Law Offices of Freedland,
Farmer, Russo & Sheller, PL
2665 Executive Park Dr., Suite 3

Weston, Florida   33331
(954) 467-6400

Edward Zebersky, Esq.
Zebersky & Payne, LLP
4000 Hollywood Blvd., STE 400-N
Hollywood, FL 33021
(954) 989-6333

Attorneys for Plaintiff

By: ___/s/ Gary M. Farmer, Jr.___
    GARY M. FARMER, JR.
    Fla. Bar # 914444

## CERTIFICATE OF SERVICE
## Case No. 06-CV-60506 (Marra/Seltzer)

I HEREBY CERTIFY that a true and correct copy of the foregoing has been faxed and mailed this 6th day of December, 2006 to:

Sandra D. Hauser, Esq.
Michael A. Schlanger, Esq.
Sonnenschein Nath & Rosenthal, LLP
1221 Avenue of the Americas
New York, NY 10020-1089
(212) 768-6700 - ph
(212) 768-6800 - fax


William A. Stetson, Esq.
Sonnenschein Nath & Rosenthal, LLP
777 S. Flagler Drive
West Palm Beach, FL 33401-6144
(561) 833-2410 - ph
(561) 833-8387 - fax

By: /s/ Gary M. Farmer, Jr.
GARY M. FARMER, JR.
Fla. Bar # 914444